260 F.2d 18
 The SCHOOL BOARD OF CITY OF NORFOLK, and John J. Brewbaker, Superintendent of Schools of the City of Norfolk, Appellants and Cross-Appellees,
v.
Leola Pearl BECKETT, an infant, etc., et al., Appellees, and
Wilhelmina Scott and Marion Scott, infants, by Clara Scott, their mother and next friend, et al., Cross-Appellants.
 No. 7759.
 United States Court of Appeals Fourth Circuit.
 Argued and Decided September 27, 1958.
 Opinion October 2, 1958.
 
 W. R. C. Cocke, Leonard H. Davis, City Atty., Norfolk, Va., and A. S. Harrison, Jr., Atty. Gen. of Virginia (Leigh D. Williams, Norfolk, Va., on brief), for appellants and cross-appellees.
 Spottswood W. Robinson, III, Richmond, Va. (Victor J. Ashe, J. Hugo Madison, Joseph A. Jordan, Jr., Norfolk, Va., and Oliver W. Hill, Richmond, Va., on brief), for appellees and cross-appellants.
 Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.
 PER CURIAM.
 
 
 1
 This case comes to us for the second time. In the first phase of the litigation the District Court, after extensive hearings, passed an order on February 26, 1957, enjoining the school authorities of Norfolk, Virginia, from refusing solely on account of race or color, to admit, enroll or educate in any school operated by them, any child otherwise qualified. The effective date of the order was stayed, however, pending review on appeal. The District Court was affirmed by this Court, School Board of City of Norfolk, Va. v. Beckett, 4 Cir., 1957, 246 F.2d 325, and certiorari was denied by the Supreme Court of the United States on October 21, 1957. 355 U.S. 855, 78 S.Ct. 83, 2 L. Ed.2d 63.
 
 
 2
 In May 1958 the plaintiffs, Negro children seeking admission to schools theretofore restricted to white pupils, applied to the Court for further relief. This was denied at that time because they had not made proper applications to the School Board. However, by July 25, 1958, the deadline set by the Board, 151 applications were received from Negro pupils. All were rejected by the Board by a resolution passed on August 18, 1958, under certain criteria and standards which it had adopted for testing and examining the applicants to determine their qualifications. A number of the applicants had refused to complete the testing by declining to be interviewed; some had failed to meet scholastic requirements. Those who properly completed the required procedures and were found otherwise qualified were denied admission for various other reasons. These are, chiefly, that (1) assigning one or two Negroes among a large number of white pupils would give the Negroes an injurious "sense of isolation"; and that (2) the "peculiar circumstances" would involve "racial conflicts and grave administrative problems."
 
 
 3
 The total rejection of the applications was brought to the attention of the District Court. Counsel for the respective parties agreed that it would be appropriate for the Court to advise the School Board members as to the applicable law, but counsel were not required to agree to the correctness of the views to be expressed by the Court. Judge Hoffman thereupon invited the School Board to attend Court on August 25, and explained to them his views of the law. He specifically informed them that the asserted reasons, namely "isolation" and "racial tensions," were legally insufficient, and requested the Board to reconsider the applications and report their action.
 
 
 4
 The School Board reported on August 29. While reserving the grounds previously assigned for rejection, they stated that after reconsidering the applications, and pursuant to their duty under the injunctive order of February 26, 1957, as the Court had interpreted it, 17 named plaintiffs, who had been found scholastically eligible, would be assigned to specified schools. These 17 were to be distributed among 6 schools — 7 in one, 5 in a second, 2 in a third, and one in each of three others.
 
 
 5
 Simultaneously the School Board filed a motion to defer the enrollment of the 17 Negroes until September 1959 on the ground that, despite the time that had elapsed, the Board "have not yet discharged the obligation which they have to the students and patrons of the public school system of this City and the citizens of Norfolk in acquainting, them with the imminence of compliance with the order of this Court and in preparing them for the consequences of such compliance." The motion was denied on September 2, 1958, the Judge reserving the right to reconsider this action if the determination of the case of Aaron v. Cooper, 78 S.Ct. 1399, then pending in the Supreme Court, should indicate the propriety of a change or stay.
 
 
 6
 Following the Supreme Court's action in that case on September 12, the District Judge filed his memorandum on September 18, declaring:
 
 
 7
 "* * * There is no longer any legal or justifiable reason further to consider defendants' request for a one year deferment. As long ago as February 12, 1957, the Superintendent of Schools testified that, in his opinion, but for the enactment of certain laws by the General Assembly of Virginia, the City of' Norfolk by a process of gradual desegregation could achieve good faith implementation and compliance with the Supreme Court decision without any insurmountable difficulties. More than eighteen months later, immediately following their first step toward good faith compliance and implementation, a delay of an additional year is requested. It is urged that time is required to `educate the adults' as to the problem presented but defendants concede that, they are presently powerless to embark upon such an educational program frowned upon by state authorities. Moreover, under state law, the affected schools must be closed by action of the Governor. To grant a delay of one year would only postpone this eventuality. * * *
 
 
 8
 "* * * Racial tension as a defense has been effectively disposed of by the decision in Aaron v. Cooper. If the theory of the `isolated child' constitutes just cause for denying the admission of a Negro child, compliance with the law of the land as interpreted by the Supreme Court would never be possible in the southern states * * * ".
 
 
 9
 Application was then made on September 23 to the Chief Judge of this Court for a stay of the District Court's order. He denied the stay but offered to convene the Court in special session to hear the appeal on the merits at an early date. The appeal was heard on September 27, and, as a prompt determination was in the interest of the parties and the public, the decision to affirm being reached by the Court, an order was signed the same day and the announcement made that an opinion embodying the Court's reasons would be filed later.
 
 
 10
 The orderly administration of justice does not permit the granting of delay for the sake of delay. The School Board has been unable, despite repeated inquiries, to inform the District Court, or this Court, what beneficial use might be made of another delay, or to give any assurance that the situation twelve months hence would differ materially from that faced today. Under these circumstances, denial by the District Judge of the requested stay was not legally erroneous or an abuse of discretion.
 
 
 11
 While the order appealed from approved the Board's action granting the applications of the 17 plaintiffs, it also approved its denial of enrollment to the remaining 134 applicants. The latter group has sought to prosecute a cross-appeal at this time. The District Court's order indicates, however, that it reserved for further consideration questions as to the validity of the standards, criteria and procedures promulgated by the School Board and applied to the rejected applicants. Counsel for both sides agreed in open court before us that the cross-appeal is premature, because the action of the Court in respect to the 134 was not intended to be final. We agree that the order is not final and appealable at this time.
 
 
 12
 The order as to the 17 plaintiffs is, therefore, affirmed. The cross-appeal is dismissed and the case as a whole is remanded for such further action as the District Court may deem proper.