**Millicent F. BROWN et al., Plaintiffs,**

**v.**

**SCHOOL DISTRICT NO. 20, CHARLES-TON, SOUTH CAROLINA, a public body corporate, and Charles A. Brown, Chairman of School District No. 20, Charleston, South Carolina; and Thomas A. Carrere, Superintendent, Lawrence O'Hear Stoney, Leonard A. Mackey, John T. Welch, Mrs. Edwin A. Pearlstine, Mrs. W. Allan Moore, Jr., John C. Hawk, Jr., Members, Board of Trustees of School District No. 20, Charleston, South Carolina, Defendants, Mark Allen, a minor, by W. K. Allen, his father and next friend; and Barbara L. Bellows and George Bellows, Jr., minors, by their father and next friend George Bellows, Julia Jeanne Canfield, a minor, by Eugene C. Canfield, her father and next friend, and Elizabeth S. Stack and William F. Stack, Sr., their father and next friend, Intervenors.**

**Civ. A. No. 7747.**

United States District Court
E. D. South Carolina,
Charleston Division.

Aug. 22, 1963.

Matthew J. Perry, Lincoln C. Jenkins, Jr., Columbia, S. C., Constance Baker Motley, Jack Greenberg, Michael Meltsner, New York City, F. Henderson Moore, Benjamin Cooke, Charleston, S. C., for plaintiffs.

Huger Sinkler, Charles H. Gibbs, Charleston, S. C., A. T. Graydon, and D. W. Robinson, Columbia, S. C., for defendants.

Burnet R. Maybank, Charleston, S. C., and George Stephen Leonard, Washington, D. C., for intervenors.

MARTIN, District Judge.

This action was brought by thirteen[1] Negro children and their parents on behalf of themselves and others similarly situated for an injunction enjoining the operation of the school system of School District Number 20 in Charleston County, South Carolina, on a racially segregated basis. Plaintiffs seek an order of this Court requiring that the plaintiffs here be allowed to enroll in the white school of their choice; requiring the School Board to submit a plan calling for the abolition of a dual school system; for an order requiring the complete integration of school personnel and for costs.

Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1343 (3), 42 U.S.C. § 1983.

After the pleadings were complete, several white students and their parents moved the Court for permission to intervene in this action. This motion was granted and they were permitted to participate in the hearing and filed extensive briefs thereafter.

The cause was heard at Columbia, South Carolina, on August 5, 1963.

School District Number 20 is composed of the City of Charleston.[2] The school system is completely segregated and operates a total of fifteen schools, six for white children and nine for Negro children. Areas served by each school

---

1. Subsequent to filing, two infant plaintiffs, Valerie Wright and Henderson Alexander, have ceased to attend the school system operated by defendants.

2. Old City of Charleston prior to recent annexations.

are established so that a dual set of attendance area lines exist; white children live in the zones of Negro schools but attend white schools. Negro children live in zones of white schools but attend Negro schools. When the white elementary school (Mitchell) was closed, (end of school year 1963) all of its former pupils living on one side of a line bisecting its zone were assigned to one of the other two white schools and all other former pupils living on the opposite side of the dividing line were assigned to another white school by the direction of the Superintendent of Schools. The total population of the District is 65,925—made up of 32,313 whites and 33,612 Negroes. There are a total of 12,647 students—9,539 Negroes and 3,108 whites. 420 teachers are employed—286 Negroes and 134 whites.

There have been no formal applications filed by Negro children to enter white schools at the first grade level. All the plaintiffs herein have made application to transfer from a Negro school to a white school.

The applications of the various plaintiffs were considered by the Board and all were rejected. Applications for transfer from one school in School District Number 20 to another are governed by rules adopted by the Board of Trustees of the District on the 10th day of June 1959. These rules prescribe the procedure for filing an application for transfer and the procedure to be followed when an application has been denied. Three of the plaintiffs, Brown, Hines and Dawson, have exhausted the administrative remedies provided for by the rules of the Board. Their applications for transfer to a white school were denied by the Board for the reason, that, the Board concluded, it was for the children's best interest to remain in the Negro schools they were presently enrolled in and attending. The other plaintiffs have not exhausted such remedies but allege that the remedies are inadequate to provide the relief sought.

The defendants contend, that the plaintiffs have no standing in this Court, until all administrative remedies are exhausted and therefore the action should be dismissed as to those plaintiffs who have failed to exhaust administrative remedies. The defendants further contend, that there is no evidence of racial discrimination present in the rejection of the applications of the plaintiffs who have exhausted their administrative remedies and, that any racial separation in the public schools of District Number 20 is voluntary and therefore offends no constitutional principle.

The primary questions presented, therefore, are the justification of the School Board's denial of that group of applications which were denied on their merits; and the remaining applications which were denied because of that group's failure to exhaust administrative remedies.

The rules promulgated by the Board of Trustees of Charleston School District Number 20 and the South Carolina Statutory Law, known as the South Carolina Pupil Assignment Law, § 21–247 et seq., South Carolina Code of Laws (1962), are the authority by which the School Board attempts to justify the denial of both groups of petitions. This same position was taken by the School Board in the case of Jeffers v. Whitley, 309 F.2d 621 (4th Cir. 1962). The overall factual situation in the instant case is analogous to that presented in the Jeffers case. By a Per Curiam opinion, the Fourth Circuit sitting en banc in the Jeffers case held:

\*     \*     \*     \*     \*     \*

"Racial segregation in the schools was required by the Constitution of North Carolina until 1954 when the Supreme Court held similar requirements invalid under the Fourteenth Amendment. Since then the School Board of Caswell County has routinely assigned each pupil to the school he attended the previous year. This practice, in conjunction with invariable denial of transfer applications, perpetuated the old system with no opportunity for escape by

any pupil enrolled in the schools in 1954.

"Since 1954, all first grade pupils have been segregated by race. The School Board contends, however, that the assignments of such pupils have been voluntary. It has routinely assigned all first grade pupils to the schools where they attended a preschool clinic, but, the Board says, the parents could select the school to which the child was taken for enrollment in the preschool clinic, their choice being limited only by the availability of transportation facilities.

"We need not consider whether freedom of choice at the first grade level, without any right of choice thereafter, would be a sufficient interim step toward establishment of a constitutionally permissible, voluntary system, for the record does not establish the factual premise. The record refers to no resolution of the Board establishing a right of choice at the time of enrollment in the preschool clinics. No such right of choice was mentioned in the pleadings of the Board in this action. The District Court has not found that the Board adopted any such policy or intended to confer any such right of choice. Indeed, the record indicates that the principal of each school controlled preschool clinic enrollments at that school. More importantly, there is no evidence that any such policy, if ever adopted, had been announced, or made known, to the people of Caswell County. Since the schools had been operated on a completely segregated basis, parents of preschool children cannot be said to have any freedom of choice until there has been some announcement that such a right exists.

\*  \*  \*  \*  \*  \*

"The principal questions, therefore, go to the justification of the School Board's denial of the Brown applications on their merits and of the Jeffers applications because of their failure to exhaust administrative remedies in 1960.

"The School Board takes shelter behind the North Carolina Pupil Enrollment Act.

"We have held that Act to be constitutional upon its face.[3] We have held that rights derived from the Fourteenth Amendment are individual and are to be individually asserted in the Federal Courts, but only after exhaustion of reasonable administrative remedies provided by the state. We have required exhaustion of administrative remedies though the School Board had initiated no abandonment of discriminatory practices which antedated the 1954 School Cases.

"Those principles, firmly established in this circuit, do not support the position of the School Board, or warrant denial of all judicial relief except to the two Saunders children. They presuppose a fair and lawful conduct of administrative procedures. They are premised upon an expectation that administrators will take appropriate steps to relieve victims of discrimination, when an unwanted assignment is shown administratively to have been discriminatory. Until there has been a failure of the administrative process, it should be assumed in a federal court that state officials will obey the law when their official action is properly invoked. When, however, administrators have displayed a firm purpose to circumvent the law, when they have consistently employed the administrative processes to frustrate enjoyment of legal rights, there is no longer room for indulgence of an assumption that the ad-

---

3. The South Carolina Act is patterned after the North Carolina Act, which was held to be constitutional on its face. See Carson v. Warlick, 4 Cir., 238 F.2d 724.

ministrative proceedings provide an appropriate method by which recognition and enforcement of those rights may be obtained.

"The School Board here has turned to the North Carolina Pupil Enrollment Act only when dealing with interracial transfer requests. It has not followed that Act in making original assignments. Assignments on a racial basis are neither authorized nor contemplated by that permissive Act. The only possible justification for a system of racial assignments, as practiced in Caswell County, is the volition of the pupils and their parents.

"Though a voluntary separation of the races in schools is uncondemned by any provision of the Constitution, its legality is dependent upon the volition of each of the pupils. If a reasonable attempt to exercise a pupil's individual volition is thwarted by official coercion or compulsion, the organization of the schools, to that extent, comes into plain conflict with the constitutional requirement. A voluntary system is no longer voluntary when it becomes compulsive.

"This is not to say that when a pupil is assigned to a school in accordance with his wish, he must be transferred immediately if his wishes change in the middle of a school year. It does not mean that alternatives may not be limited if one school is overcrowded while others are not, or that special public transportation must be provided to accommodate every pupil's wish. It does mean that if a voluntary system is to justify its name, it must, at reasonable intervals, offer to the pupils reasonable alternatives, so that, generally, those, who wish to do so, may attend a school with members of the other race.

"Caswell County's administration of her schools has been obviously compulsive. The invariable denial of interracial transfer requests cannot be squared with any freedom of choice on the part of the applicants. There can be no freedom of choice if its exercise is conditioned upon exhaustion of administrative remedies which, as administered, are unnegotiable obstacle courses. Freedom of choice is not accorded if the choice of the individual may be disregarded unless he can prove, by a preponderance of the evidence, that, under some other system never adopted nor practiced by the School Board, he would have been assigned to the school of his choice. Freedom of choice is a vapid notion if its attempted exercise may be branded, condemned and ignored as racially motivated.

"Administrative remedies, such as those afforded by North Carolina's Pupil Enrollment Act, have a place in a voluntary system of racial separation. If the system in operation was truly voluntary, if, generally, interracial transfers were to be had for the asking, a school official might still deny a particular request upon grounds thought not to undermine the voluntary nature of the system. In that event, it would be appropriate for the state to provide the applicant effective means of administrative review, and failure to pursue an adequate administrative remedy might foreclose judicial intervention. When the administrative processes, however, are used solely to prevent all freedom of choice in a system dependent for its legality upon the volition of its pupils, the remedy is both inadequate and discriminatory.

"In other circumstances, when an administrative remedy respecting school assignments and transfers, however fair upon its face, has, in practice, been employed principally as a means of perpetration of discrimination and of denial of constitutionally protected rights, we have consistently held it inadequate. A

remedy, so administered, need not be exhausted or pursued before resort to the courts for enforcement of the protected rights.

"In the light of these principles, the District Court was clearly correct in concluding that the transfer applications the Saunders children should have been granted. The same conclusion was required with respect to the Brown and Jeffers applications. Those children had withdrawn their consent, if they ever had consented, to their assignment, because of their race, to Caswell County Training School. They were legally entitled to attend the school of their choice, under an assignment system having no legal justification except by their consent, unless administrative considerations dictated some other alternative, and nothing of the sort is suggested. The remoteness from the Brown residence of the route of the Bartlett Yancey bus is not such a reason, for, concededly, the Brown children could ride the Training School bus and walk the short distance from that school to Bartlett Yancey. The failure of the Jeffers children to exhaust the administrative remedy is an irrelevance, for, as we have held, that remedy, as administered, was inadequate and discriminatory.

"We think general injunctive relief is also required.

"While rights derived from the Constitution are individual and are to be individually asserted, the record shows a general disregard by the School Board of the constitutional rights of Negro pupils who do not wish to attend schools populated exclusively by members of their race. Some of the plaintiffs exhausted administrative remedies, and in this action they have sought relief for others similarly situated as well as for themselves. Upon a proper showing, such relief is available in a spurious class action, such as this.

"Since the School Board has been obstinate in refusing to recognize the constitutional rights of Negro applicants, this case should not be closed on a basis which would leave the Board free to ignore the rights of other applicants, until, after long and expensive litigation, they were judicially declared. The duty to recognize the constitutional rights of pupils in the Caswell County Schools rests primarily upon the School Board. There it should be placed by an appropriate order of the court, for the District Court has a secondary duty of enforcement of individual right and of supervision of the steps taken by the School Board to bring itself within the requirements of the law.

"In these circumstances, the duty of the court, as a court of equity, is traditionally discharged through injunctive orders.

"We conclude, therefore, that the appellants, the Brown and Jeffers children, as well as the appellants, Saunders, are entitled to individual relief. This may be done by an order comparable to that of the District Court respecting the Saunders children. The District Court ordered their admission to the school of their choice if they should present themselves there for enrollment. The order similarly should require the School Board to enroll the Brown and Jeffers children in Bartlett Yancey, provided only, as to each of them, that he presents himself there for enrollment at the commencement of any semester.

"On behalf of others, similarly situated, the appellants are not entitled to an order requiring the School Board to effect a general intermixture of the races in the schools. They are entitled to an order enjoining the School Board from refusing admission to any school of any pupil because of the pupil's race. So long as the School Board follows its practice of racial assignments,

the injunctive order should require that it freely and readily grant all requests for transfer or initial assignment to a school attended solely or largely by pupils of the other race. The order should prohibit the School Board's conditioning its grant of any such requested transfer upon the applicant's submission to futile, burdensome or discriminatory administrative procedures. The order should further provide that, if the School Board does not adopt some other nondiscriminatory plan, it shall inform pupils and their parents that there is a right of free choice at the time of initial assignment and at such reasonable intervals thereafter as may be determined by the Board with the approval of the District Court. How and when such information shall be disseminated may be determined by the District Court after receiving the suggestions of the parties.

"The injunctive order may provide for its modification upon application of the School Board to the extent that modification may be required to enable the Board to solve and eliminate any administrative difficulty that may arise. It may contain other provisions not inconsistent with this opinion.

"The injunctive order should remain in effect until the School Board, if it elects to do so, presents and, with the approval of the District Court, adopts some other plan for the elimination of racial discrimination in the operation of the schools of Caswell County.

"The District Court should retain jurisdiction of the action for further proceedings and the entry of such further orders as are not inconsistent with this opinion."

In Bell v. School Board of Powhatan County, 321 F.2d 494 (4th Cir. 1963).

" * * * The School Board argues that whatever segregation exists must be deemed voluntary until a valid transfer application is filed. They look for support to the state court decision declaring that it was not their duty to conduct any investigations, and that the applications were void and should be disregarded. We, however, hold that the entire record, including the filing of these applications and of the present complaint itself, amply demonstrate the involuntary character of segregation in the Powhatan schools. Moreover, the continued practice of initially assigning all students by race shows that the School Board is actively engaged in perpetuating segregation. See Jeffers v. Whitley, 309 F.2d 621, (4th Cir. 1962)."

In Green v. School Board of the City of Roanoke, 304 F.2d 118 (4th Cir. 1962).

" * * * The pupil assignment system in effect in the City of Roanoke, as administered by the joint efforts of the local school authorities and the state Pupil Placement Board, is, as demonstrated by the facts, infected throughout with racially discriminatory applications of assignment criteria.

"All initial assignments of children enrolling in the city's school system are on a completely racial basis. Every white child is initially assigned to a school in a section other than section II, regardless of how near he might reside to a section II school. Every Negro child, on the other hand, is initially assigned to a section II school, regardless of his place of residence or any other criteria. The Negro child, if he desires a desegregated education, must thereafter run the gauntlet of numerous transfer criteria in order to extricate himself, if he can, from the section II schools. These are hurdles to which a white child, living in the same area as the Negro and having the same scholastic aptitude, would not be subjected, for he would have been initially assigned to the school to which the Negro

seeks admission. In Jones vs. School Board of City of Alexandria, Virginia, 278 F.2d 72, 77 (4th Cir., 1960), this practice was expressly condemned:

" ' * * * if the criteria are, in the future, applied only to applications for transfer and not to applications for initial enrollment by children not previously attending the city's school system, then such action would also be subject to attack on constitutional grounds, for by reason of the existing segregation pattern it will be Negro children, primarily, who seek transfers.'

"Or, as we stated in Hill v. School Board of City of Norfolk, Virginia, 282 F.2d 473, 475 (4th Cir., 1960), where

" ' * * * assignments to the first grade in the primary schools are still on a racial basis, and a pupil thus assigned to the first grade still is being required to remain in the school to which he is assigned, unless, on an individual application, he is reassigned on the basis of the criteria which are not then applied to other pupils who do not seek transfers * *, such an arrangement does not meet the requirements of the law.'

"Steps must be taken to end this unlawful initial assignment arrangement which the record discloses to exist in the City of Roanoke. It is a racially discriminatory application of assignment criteria to which all of the appellants were subjected."

In addition to the decisions of the Fourth Circuit, holding that Negro children need not comply with administrative procedures prior to instituting suit in the federal courts when the school system is operated on a racially segregated basis, the United States Supreme Court in McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622, has put beyond debate the proposition that, in a school desegregation case, it is not necessary to exhaust state administrative remedies before seeking relief in the federal courts.

The Court said:

"[As] We [have] stated in Monroe v. Pape, 365 U.S. 167, 183 [81 S.Ct. 473, 5 L.Ed.2d 492]:

" 'It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.'

"The cause of action alleged here is pleaded in terms of * * * 42 U.S.C. § 1983 * * *

" * * * That is the statute that was involved in Monroe v. Pape, * * * and we reviewed its history at length in that case. * * * The purposes were several fold—to override certain kinds of state laws, to provide a remedy where state law was inadequate, 'to provide a federal remedy where the state remedy, though adequate in theory, was not available in practice' (id., 174), and to provide a remedy in the federal courts supplementary to any remedy any State might have."

The defendants by their answer and the intervenors by similar allegations contend: "that there are differences and disparities between the ethnic group allegedly represented by plaintiffs (Negro children) and that represented by petitioners (white children) as to form a rational basis for separating such ethnic groups in the schools of Charleston.

In Brown v. Board of Education, 347 U.S. 483, 495, 74 S.Ct. 686, 692, 98 L.Ed. 873, the United States Supreme Court held:

"We conclude that in the field of public education the doctrine of 'separate but equal' has no place. Separate educational facilities are inherently unequal. Therefore, we hold that the plaintiffs and others similarly situated for whom the actions have been brought are, by reason of

the segregation complained of, deprived of the equal protection of the laws guaranteed by the Fourteenth Amendment."

The position taken by the defendants and the intervenors in effect, asks this Court (a U. S. District Court) to overrule the United States Supreme Court, the Fourth Circuit Court of Appeals and all the numerous decisions by those courts, reiterating, expanding and amplifying the holdings of the United States Supreme Court in Brown v. Board of Education (supra). Under the doctrine of *stare decisis* this Court has no such authority.

By a unanimous opinion filed, May 27, 1963, the United States Supreme Court in Watson v. City of Memphis, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed.2d 529, said:

"It is now more than nine years since this Court held in the first Brown decision, Brown v. Board of Education, 347 U.S. 483 [74 S.Ct. 686, 98 L.Ed. 873], that racial segregation in state public schools violates the Equal Protection Clause of the Fourteenth Amendment."

" * * * Given the extended time which has elapsed, it is far from clear that the mandate of the second Brown decision [349 U.S. 294, 75 S. Ct. 753, 99 L.Ed. 1083], requiring that desegregation proceed with 'all deliberate speed' would today be fully satisfied by types of plans or programs for desegregation of public educational facilities which eight years ago might have been deemed sufficient. Brown never contemplated that the concept of 'deliberate speed' would countenance indefinite delay in elimination of racial barriers in schools, let alone other public facilities not involving the same physical problems or comparable conditions."

The holdings of the United States Supreme Court and the Fourth Circuit Court of Appeals in the cases hereinabove referred to, dictate to this court the decision that must follow in the light of the existing factual situation surrounding the operation of School District Number 20.

## FINDINGS OF FACT

1. This school system is completely segregated, white children attending those schools operated for whites and Negro children attending only those schools operated for Negroes.

2. A dual set of attendance area lines exist, with white children living in the zones of Negro schools and Negro children living in the zones of white schools.

3. No formal application has been made by any Negro child to enter a white school at the first grade level; all of the plaintiffs herein have made formal applications to transfer from a Negro school to a white school.

4. All applications have been denied by the Board; (e) Brown, Hines and Dawson because it was for the applicants' best interest; (b) Glover, E. Alexander, Clarence Alexander, Cassandra Alexander, G. Alexander, J. Ford, B. Ford and G. Ford because they had not complied with and exhausted their administrative remedies.

5. That the applicants of the second group, as set out in 4(b) above, would have been denied by the Board had they exhausted their administrative remedies.

6. That the rules and regulations of the Board are inadequate, since they fail to establish a right of choice, to a child or his parents, at the time of enrollment and the announcement of such right of choice made known to the parents of pre-school children.

7. That any consent on the part of the plaintiffs or their parents that might have been inferred, prior to the filing of their applications to transfer and the bringing of this action, is clearly refuted and the denial of their applications for transfer to white schools amounts to involuntary segregation.

8. The plaintiffs' applications for transfer are the only ones to which the Board's Rules, governing transfer and the South Carolina law governing pupil assignment, have been applied.

9. Neither the Board Rules or the South Carolina Pupil Assignment Law is applied by the Board when enrolling pupils at the first grade level.

10. That the school year for School District Number 20 begins in September 1963 and runs to June 1964. There are no mid-term semester promotions or initial assignments of first grade pupils.

11. The authorities of School District Number 20 have taken no action, to formulate any plan or procedure, towards carrying out the mandate of the United States Supreme Court as announced in the second Brown decision and subsequent decisions of that Court and the Fourth Circuit Court of Appeals.

### ORDER

1. It is ordered that the defendants herein and their agents, servants and employees, admit and enroll as students the Plaintiffs, Millicent F. Brown, Oveta Glover, Clarisse Karan Hines, Ralph Stoney Dawson, Eddie Alexander, Clarence Alexander, Cassandra Alexander, Gerald Alexander, Jacqueline Ford, Barbara Ford and Gale Ford at the white school, where a white child would normally attend, if he resided in the same school zone that each of plaintiffs respectively resides in, subject to the same terms and conditions as other students enrolled there, provided only, that these minor plaintiffs present themselves at said school for registration at the beginning of the new school term in September 1963.

2. It is further ordered that the defendants, their agents, servants and employees are hereby restrained and enjoined from refusing admission to the minor plaintiffs herein on the basis of race or color.

3. It is further ordered that due to the short period of time before the beginning of the 1963–64 school year; the uncertainty of the number of applicants that may desire transfer to a different school than the one in which they are presently enrolled; the uncertainty of the number of first grade students who may desire to enroll in a school other than the one in which they would have been enrolled prior to this order; the administrative difficulties that would necessarily flow from such uncertainties, this Court, in the exercise of the discretion vested in it, holds that it would be impractical to require the Board to admit others, similarly situated to the plaintiffs herein, to schools other than those they are presently enrolled in or other than those that they would be initially enrolled in, under the dual system now in existence for the 1963–64 school year.

4. It is further ordered, however, that beginning with the school year 1064–65 the defendants and their agents, servants and employees are hereby restrained and enjoined from refusing admission, assignment or transfer of any other Negro child entitled to attend the schools under their supervision, management or control, on the basis of race or color.

5. It is further ordered that beginning with the school year 1964–65, the defendants and their agents, servants and employees are hereby restrained and enjoined from:

(a) Failing or refusing to freely and readily grant all requests by parents or guardians for the transfer or initial assignment of pupils to a school attended solely or largely by pupils of another race;

(b) Conditioning the grant of requests for transfers or initial assignments pursuant to paragraph 5 (a) above upon the applicants' submission to any futile, burdensome or discriminatory administrative procedures. This provision is intended to include, but is not limited to, prohibiting the use of such administrative procedures as standards for deciding such requests which are not generally and uniformly applied in assigning all pupils, and the requirement that pupils or parents attend administrative hearings, or submit to tests or other evaluations which are not uniformly applied in assigning pupils.

6. It is further ordered that the defendant, their agents, servants and employees shall inform the parents or guardians of all pupils presently attending school in School District Number 20, as well as all those who shall hereafter enroll in the said school system, of the right of all pupils to freely choose to attend a racially nonsegregated school, in the following manner:

(a) The following notice or its equivalent shall be individually given in writing at the times prescribed in subparagraph 6(b) below to the parents or guardians of all pupils:

"Every child in School District Number 20 school system has the right to attend a school freely selected without regard to race or color. Parents' requests for initial assignment or transfer of pupils in order to attend a school with members of the other race will be freely granted. If your child is entering school for the first time, you may present the child for enrollment at any school serving the child's grade level without regard to whether the school you choose is or was formerly attended solely by Negro pupils or solely by white pupils. If your child is now assigned to an all-Negro or an all-white school, and you desire that the child be transferred to another school in order to obtain a desegregated education, you should indicate this desire on this notice in the space provided and return it to your child's present teacher or principal." The foregoing language is sufficient under this Order, but the school authorities may adopt such other language consistent with the purpose of the order as they may desire. The defendant school authorities may give this notice by regular United States mail or by any other means which will fairly insure that copies reach all parents concerned.

(b) The notices prescribed in subparagraph 6(a) above shall be given to the parents of every child presently enrolled in School District Number 20 system at least ten (10) days before the end of the 1963–64 school year. The same notice shall be given to the parents of every child who is enrolled in School District Number 20 system at the end of the 1963–64 school year at least thirty (30) days before the beginning of the 1964–65 school year, and thereafter the notice shall be given to such persons at least thirty (30) days before the beginning of each school year, unless the defendants secure the approval of the Court to give the notice in some other manner. The same notice shall also be given to the parents of every child who shall enroll in School District Number 20 school system for the first time, whether such child is beginning school, has changed residence from another school, administrative unit or otherwise, at or prior to the time any such pupil is first assigned to or enrolled in a school in the system, at whatever time of the year this may occur.

7. The provisions of paragraphs 5 and 6 above of this Order are to remain in effect until the defendant school authorities present to this Court, and with its approval, adopt some other plan for the complete elimination of racial discrimination in the operation of the public schools in School District Number 20. When and if the defendants file such a desegregation plan with the Court, they shall serve copies upon plaintiffs' attorneys and the Court will schedule further hearings in order to judge the adequacy of such plan.

8. It is hereby provided that the School Board of District Number 20 may apply to this Court for any reasonable modification of this Order necessary to solve and eliminate any administrative difficulties that may arise hereunder.

9. It is further ordered that this Court retain jurisdiction of this cause for such further proceedings and entry of such further orders as are necessary and proper, including the questions of

teacher qualifications and assignments as well as attorneys' fees requested by plaintiffs.

10. It appearing, that some of the named defendants are no longer serving in the capacity of officials of School District Number 20; It is, therefore, ordered, that their successors in office, not originally named as defendants in this action, are substituted as defendants herein for their predecessors in public office. Counsel for the defendants are directed to make known to the United States Marshal, the names of the present School Officials of School District Number 20, in order that a copy of this Order may be served upon each, personally, by the Marshal.