Alexander JEFFERS and Sylveen Jeffers, minors, and John L. Jeffers and Annie L. Jeffers, their parents and next friends; Nathan Brown, Lunsford Brown, and Sheliah Brown, minors, and Jasper Brown, their father and next friend; and Charlie Saunders, Jr., and Fred Saunders, minors, and C. H. Saunders, their father and next friend, Appellants,

v.

Thomas H. WHITLEY, Superintendent of the Public Schools of Caswell County, David L. Johnson, Chairman, C. N. Barber, J. A. Hodges, N. L. Oliver and J. C. Wilkins, Members of the School Board of Caswell County, Appellees.

No. 8593.

United States Court of Appeals Fourth Circuit.

Reargued July 9, 1962.

Decided Oct. 12, 1962.

Derrick A. Bell, Jr., New York City (C. O. Pearson, William A. Marsh, Jr., Durham, N. C., Jack Greenberg and James M. Nabrit, III, New York City, on brief), for appellants.

Robert R. Blackwell, Yanceyville, N. C., for appellees.

Before SOBELOFF, Chief Judge, and HAYNSWORTH, BOREMAN, BRYAN and BELL, Circuit Judges, sitting en banc.

PER CURIAM.

This is another school case. It comes here on the appeal of Negro plaintiffs, two of whom the District Court ordered admitted to the school of their choice. They complain, with justification, that there was no defensible basis for withholding judicial enforcement of the established rights of other individual plaintiffs or for the denial of general declaratory and injunctive relief.

The action was originally instituted in December, 1956 by forty-three Negro children, attending schools in Caswell County, North Carolina, and their parents. They sought a general order requiring the School Board to reorganize the schools of Caswell County and to operate them on a nonsegregated basis. By supplemental pleadings filed in 1960, it was alleged that certain of the individual plaintiffs had applied for transfers, that the applications had been denied and that administrative remedies had been exhausted. They asked for an order requiring the School Board to submit a plan for desegregating the schools and for an injunction which would prohibit the Board, after submission of a desegregation plan, from requiring any Negro pupil to attend school on a segregated basis.

By October 1960, twenty-seven of the original pupil-plaintiffs were no longer students in the Caswell County school

system. Some of them had graduated. Some had dropped out of school. Some had moved out of the county. Sixteen of them were still in Caswell County schools. Each of the sixteen was still assigned to and still attending a school in which the entire pupil population was Negro.

In December, 1959, counsel entered into a stipulation that plaintiffs' counsel would furnish a list of those of the nominal plaintiffs interested in a reassignment. Pursuant to the stipulation, the School Board was to promptly notify the plaintiffs of the assignments of the interested pupils for the 1960–61 school year and it agreed to hold hearings on reassignment requests.

Nine of the sixteen nominal plaintiffs, still in the Caswell schools, through their attorneys indicated their interest in reassignment for the 1960–61 school year. No one of the nine was reassigned. One of those has since graduated from high school; another has dropped out of school. It was with the remaining seven that the trial proceedings were principally concerned. They are the appellants here.

Caswell is a rural county in north-central North Carolina. Its metropolis is the village of Yanceyville. Relatively few of its children of school age live within walking distances of the schools they attend. The great majority are transported to and from school in buses operated by the School Board. There are approximately 6,000 pupils in the county's schools; approximately 53% of them are Negroes.

The county, through its School Board, maintains fifteen schools. Six of them, five elementary schools and one consolidated elementary and high school, are attended solely by Negroes. Nine of them, five elementary schools and four consolidated elementary and high schools, are attended solely by white pupils.

In denying the nine transfer applications it received in the summer of 1960, the Board gave no explanation of its action. It acknowledged no set of principles governing its determinations. Board members testified that they considered all information available to them, and then each member voted as his conscience dictated. Those witnesses declined to suggest circumstances or conditions which would lead them to support a Negro's application for a transfer to a white school. They did refer at the trial, however, to facts which influenced the votes of the witnesses.

Samuel Maloy Mitchell was about to enter the twelfth grade. He had been attending Caswell County Training School, the only school in the county accredited by the Southern Association of Colleges and Secondary Schools. He applied for a transfer to Bartlett Yancey, a high school located in the village of Yanceyville within two blocks of Caswell County Training School. He planned to go on to college. Witnesses for the Board thought it better for him to remain at the accredited Training School and continue to receive instruction in French than to transfer to unaccredited Bartlett Yancey where French was unavailable.

Mitchell has since graduated.

Three children of Jasper Brown, Nathan, Lunsford and Sheliah, sought transfers from the Caswell County Training School to Bartlett Yancey. Buses going to the Training School picked up the Brown children four-tenths of a mile from their home. The nearest route of a bus going to Bartlett Yancey was two and a half miles from the Brown home, and it was thought unsafe to operate two buses over the narrow road near the end of which the Browns lived. These are appropriate considerations, but the two schools were within two blocks of each other. It was admitted that there was no reason the Brown children could not ride the Training School bus and walk from that school to Bartlett Yancey.

Alexander, Charlie [1] and Sylveen Jeffers also applied for transfers from the

---

1. Later, Charlie dropped out of school. He is not an appellant.

Training School to Bartlett Yancey. Neither they nor their parents appeared at a hearing, held by the Board, to which they had been invited. The father of the Brown children reported to the Board that he had spoken to Jeffers and that Jeffers had said he was too busy to attend. This, thought members of the Board, showed little interest in the Jeffers' applications.

Charlie and Fred Saunders [2] lived between New Dotmond School and Murphy. New Dotmond, which they attended, is four and two-tenths miles east of the Saunders' home; Murphy is two and four-tenths of a mile west of their home. Buses serving each school pass in front of their house, going in opposite directions. Board members thought New Dotmond, which the Saunders boys had been attending, was the better and larger school. They also referred to the fact that other Saunders siblings attending New Dotmond did not seek similar transfers.

As to all of these applications, Board members found further reason for their denial in the applicants' motivation by racial considerations. In the Brown applications, for instance, the reason for the requested transfers was stated to be, "Request for transfer to an integrated school system regardless of race, creed or color." This led a member of the Board to the novel contention, " * * * the reason they gave for wanting to transfer was race and we cannot assign them on account of race." Counsel for the Board makes the same contention here.

A requirement of the School Cases [3] is that transfer applications be not denied on grounds that are racially discriminatory, but a victim of racial discrimination does not disqualify himself for all relief when he complains of it.

These applicants had been complaining, as plaintiffs in this action and as transfer applicants, that they were the victims of racial discrimination. They had not contended, and they did not seek to prove, for apparently they could not, that Bartlett Yancey was superior to Caswell County Training School or more accessible. In that completely segregated system, however, they were entitled to prefer Bartlett Yancey. They did contend, and they proved, they were not in the Training School by their volition and they were denied the right to attend Bartlett Yancey because of their race. The complaint, firmly founded on the School Cases, required not the deaf ear of the Board, but Board action to rectify its wrong.

The Board, however, denies that its practices are racially discriminatory.

Racial segregation in the schools was required by the Constitution of North Carolina until 1954 when the Supreme Court held similar requirements invalid under the Fourteenth Amendment.[4] Since then the School Board of Caswell County has routinely assigned each pupil to the school he attended the previous year.[5] This practice, in conjunction with invariable denial of transfer applications, perpetuated the old system with no opportunity for escape by any pupil enrolled in the schools in 1954.

Since 1954, all first grade pupils have been segregated by race. The School Board contends, however, that the assignments of such pupils have been voluntary.

---

2. The District Court later ordered the admission of these two children to Murphy school.

3. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884; Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083.

4. In 1956, North Carolina's Supreme Court found North Carolina's constitutional requirement invalid. Constantian v. Anson County, 244 N.C. 221, 93 S.E.2d 163.

5. It is not clear how pupils finishing an unconsolidated elementary school were assigned to high schools. The chairman of the Board testified there had been no occasion to assign any pupil moving into the county after attending a school in another district.

It has routinely assigned all first grade pupils to the schools where they attended a preschool clinic, but, the Board says, the parents could select the school to which the child was taken for enrollment in the preschool clinic, their choice being limited only by the availability of transportation facilities.

We need not consider whether freedom of choice at the first grade level, without any right of choice thereafter, would be a sufficient interim step toward establishment of a constitutionally permissible, voluntary system, for the record does not establish the factual premise. The record refers to no resolution of the Board establishing a right of choice at the time of enrollment in the preschool clinics. No such right of choice was mentioned in the pleadings of the Board in this action. The District Court has not found that the Board adopted any such policy or intended to confer any such right of choice. Indeed, the record indicates that the principal of each school controlled preschool clinic enrollments at that school. More importantly, there is no evidence that any such policy, if ever adopted, had been announced, or made known, to the people of Caswell County. Since the schools had been operated on a completely segregated basis, parents of preschool children cannot be said to have any freedom of choice until there has been some announcement that such a right exists.

In an opinion, containing findings of fact and conclusions of law, filed August 4, 1961,[6] the District Court stated, "The record in this case strongly indicates that some of the minor plaintiffs, particularly the Sanders [sic] children, were denied reassignment solely on the basis of their race." Nevertheless it withheld all relief. As to the Jeffers children, it did so because they failed to exhaust administrative remedies when they and their parents did not attend the hearing held by the Board on July 6, 1960. It did so as to the Saunders and Brown children on the ground that in their transfer applications, as in their pleadings in this action, they did not seek individual reassignment or individual relief, but a general reassignment of all pupils in the schools. It gave the Brown and Saunders children another opportunity to reapply to the School Board, on an individual basis, for reassignment.

These five children availed themselves of that further opportunity. They filed new applications for reassignment to particular schools. At about the same time, counsel for the appellants moved to amend the supplemental complaint to seek an order requiring the admission of the individual plaintiffs to the schools to which they had sought reassignment.

The new Brown and Saunders transfer applications were promptly denied by the School Board. As to the Brown children, the Board was of the opinion that the applications were based solely upon the race of the applicants, a notion we have already held to be without legal significance. As to the Saunders children, the Board noticed an obvious error in the applications, for they requested transfers from Murphy to New Dotmond, rather than from New Dotmond to Murphy. It summoned the father to appear before it, but he failed to attend the scheduled hearing.

When the matter came again before it, the District Court, in an unreported opinion filed December 29, 1961, concluded the Saunders' applications should have been granted. It found no sufficient ground for denial of the applications and satisfactory explanation of the father's failure to appear before the Board on August 24th. As to the Brown children, however, after referring to the bus routes and the absence of a showing that any neighbor of the Browns attended Bartlett Yancey, the Court concluded they had failed to establish by a preponderance of the evidence that they would have been assigned to that school had they been white.

6. 197 F.Supp. 84.

The principal questions, therefore, go to the justification of the School Board's denial of the Brown applications on their merits and of the Jeffers applications because of their failure to exhaust administrative remedies in 1960.

The School Board takes shelter behind the North Carolina Pupil Enrollment Act.[7]

■■ We have held that Act to be constitutional upon its face.[8] We have held that rights derived from the Fourteenth Amendment are individual and are to be individually asserted in the Federal Courts, but only after exhaustion of reasonable administrative remedies provided by the state.[9] We have required exhaustion of administrative remedies though the School Board had initiated no abandonment of discriminatory practices which antedated the 1954 School Cases.[10]

■ Those principles, firmly established in this circuit, do not support the position of the School Board, or warrant denial of all judicial relief except to the two Saunders children. They presuppose a fair and lawful conduct of administrative procedures. They are premised upon an expectation that administrators will take appropriate steps to relieve victims of discrimination, when an unwanted assignment is shown administratively to have been discriminatory. Until there has been a failure of the administrative process, it should be assumed in a federal court that state officials will obey the law when their official action is properly invoked. When, however, administrators have displayed a firm purpose to circumvent the law, when they have consistently employed the administrative processes to frustrate enjoyment of legal rights, there is no longer room for indulgence of an assumption that the administrative

proceedings provide an appropriate method by which recognition and enforcement of those rights may be obtained.

■ The School Board here has turned to the North Carolina Pupil Enrollment Act only when dealing with interracial transfer requests. It has not followed that Act in making original assignments. Assignments on a racial basis are neither authorized nor contemplated by that permissive Act. The only possible justification for a system of racial assignments, as practiced in Caswell County, is the volition of the pupils and their parents.

■ Though a voluntary separation of the races in schools is uncondemned by any provision of the Constitution, its legality is dependent upon the volition of each of the pupils. If a reasonable attempt to exercise a pupil's individual volition is thwarted by official coercion or compulsion, the organization of the schools, to that extent, comes into plain conflict with the constitutional requirement. A voluntary system is no longer voluntary when it becomes compulsive.

■ This is not to say that when a pupil is assigned to a school in accordance with his wish, he must be transferred immediately if his wishes change in the middle of a school year. It does not mean that alternatives may not be limited if one school is overcrowded while others are not, or that special public transportation must be provided to accommodate every pupil's wish. It does mean that if a voluntary system is to justify its name, it must, at reasonable intervals, offer to the pupils reasonable alternatives, so that, generally, those, who wish to do so, may attend a school with members of the other race.[11]

■ Caswell County's administration of her schools has been obviously com-

7. N.C.Gen.Stat. §§ 115–176 to 115–179 (1960).

8. Carson v. Warlick, 4 Cir., 238 F.2d 724.

9. Holt v. Raleigh City Board of Education, 4 Cir., 265 F.2d 95; Covington v. Edwards, 4 Cir., 264 F.2d 780; Carson v. Warlick, 4 Cir., 238 F.2d 724; Carson

v. Board of Education of McDowell County, 4 Cir., 227 F.2d 789.

10. See particularly Covington v. Edwards, supra.

11. In other systems of assignment, as those based upon geographic school zoning, the wish of the individual may be,

pulsive. The invariable denial of interracial transfer requests cannot be squared with any freedom of choice on the part of the applicants. There can be no freedom of choice if its exercise is conditioned upon exhaustion of administrative remedies which, as administered, are unnegotiable obstacle courses. Freedom of choice is not accorded if the choice of the individual may be disregarded unless he can prove, by a preponderance of the evidence, that, under some other system never adopted nor practiced by the School Board, he would have been assigned to the school of his choice. Freedom of choice is a vapid notion if its attempted exercise may be branded, condemned and ignored as racially motivated.

Administrative remedies, such as those afforded by North Carolina's Pupil Enrollment Act, have a place in a voluntary system of racial separation. If the system in operation was truly voluntary, if, generally, interracial transfers were to be had for the asking, a school official might still deny a particular request upon grounds thought not to undermine the voluntary nature of the system. In that event, it would be appropriate for the state to provide the applicant effective means of administrative review, and failure to pursue an adequate administrative remedy might foreclose judicial intervention. When the administrative processes, however, are used solely to prevent all freedom of choice in a system dependent for its legality upon the volition of its pupils, the remedy is both inadequate and discriminatory.

 In other circumstances, when an administrative remedy respecting school assignments and transfers, however fair upon its face, has, in practice, been em-

ployed principally as a means of perpetration of discrimination and of denial of constitutionally protected rights, we have consistently held it inadequate.[12] A remedy, so administered, need not be exhausted or pursued before resort to the courts for enforcement of the protected rights.

 In the light of these principles, the District Court was clearly correct in concluding that the transfer applications of the Saunders children should have been granted. The same conclusion was required with respect to the Brown and Jeffers applications. Those children had withdrawn their consent, if they ever had consented, to their assignment, because of their race, to Caswell County Training School. They were legally entitled to attend the school of their choice, under an assignment system having no legal justification except by their consent, unless administrative considerations dictated some other alternative, and nothing of the sort is suggested. The remoteness from the Brown residence of the route of the Bartlett Yancey bus is not such a reason, for, concededly, the Brown children could ride the Training School bus and walk the short distance from that school to Bartlett Yancey. The failure of the Jeffers children to exhaust the administrative remedy is an irrelevance, for, as we have held, that remedy, as administered, was inadequate and discriminatory.

We think general injunctive relief is also required.

 While rights derived from the Constitution are individual and are to be individually asserted, the record shows a general disregard by the School Board of the constitutional rights of Negro pupils who do not wish to attend schools popu-

and usually is, immaterial. It is the essence of a voluntary system of racial separation.

12. Marsh v. County School Board of Roanoke County, 4 Cir., 305 F.2d 94; McCoy v. Greensboro City Board of Education, 4 Cir., 283 F.2d 667; Farley v. Turner, 4 Cir., 281 F.2d 131; School

Board of the City of Newport News v. Atkins, 4 Cir., 246 F.2d 325; School Board of the City of Charlottesville v. Allen, 4 Cir., 240 F.2d 59; and see, from other circuits, such cases as Gibson v. Board of Public Instruction, 5 Cir., 272 F.2d 763; Northcross v. Board of Education of City of Memphis, 6 Cir., 302 F.2d 818.

lated exclusively by members of their race. Some of the plaintiffs exhausted administrative remedies, and in this action they have sought relief for others similarly situated as well as for themselves. Upon a proper showing, such relief is available in a spurious class action, such as this.

■ Since the School Board has been obstinate in refusing to recognize the constitutional rights of Negro applicants, this case should not be closed on a basis which would leave the Board free to ignore the rights of other applicants, until, after long and expensive litigation, they were judicially declared. The duty to recognize the constitutional rights of pupils in the Caswell County Schools rests primarily upon the School Board.[13] There it should be placed by an appropriate order of the court, for the District Court has a secondary duty of enforcement of individual rights and of supervision of the steps taken by the School Board to bring itself within the requirements of the law.

In these circumstances, the duty of the court, as a court of equity, is traditionally discharged through injunctive orders.[14]

We conclude, therefore, that the appellants, the Brown and Jeffers children, as well as the appellants, Saunders, are entitled to individual relief. This may be done by an order comparable to that of the District Court respecting the Saunders children. The District Court ordered their admission to the school of their choice if they should present themselves there for enrollment. The order similarly should require the School Board to enroll the Brown and Jeffers children in Bartlett Yancey, provided only, as to each of them, that he presents himself there for enrollment at the commencement of any semester.

■ On behalf of others, similarly situated, the appellants are not entitled to an order requiring the School Board to effect a general intermixture of the races in the schools. They are entitled to an order enjoining the School Board from refusing admission to any school of any pupil because of the pupil's race. So long as the School Board follows its practice of racial assignments, the injunctive order should require that it freely and readily grant all requests for transfer or initial assignment to a school attended solely or largely by pupils of the other race. The order should prohibit the School Board's conditioning its grant of any such requested transfer upon the applicant's submission to futile, burdensome or discriminatory administrative procedures. The order should further provide that, if the School Board does not adopt some other nondiscriminatory plan, it shall inform pupils and their parents that there is a right of free choice at the time of initial assignment and at such reasonable intervals thereafter as may be determined by the Board with the approval of the District Court. How and when such information shall be disseminated may be determined by the District Court after receiving the suggestions of the parties.

The injunctive order may provide for its modification upon application of the

13. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083; Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L. Ed.2d 5.

14. Marsh v. County School Board of Roanoke County, 4 Cir., 305 F.2d 94; Green v. School Board of the City of Roanoke, 4 Cir., 304 F.2d 118; Farley v. Turner, 4 Cir., 281 F.2d 131; Jones v. School Board of City of Alexandria, 4 Cir., 278 F.2d 72; Hamm v. County School Board of Arlington County, 4 Cir., 263 F.2d 226; Board of Education of St. Mary's County v. Groves, 4 Cir., 261 F.2d 527; School Board of City of Norfolk v. Beckett, 4 Cir., 260 F.2d 18; County School Board of Arlington County v. Thompson, 4 Cir., 252 F.2d 929; Allen v. County School Board of Prince Edward County, 4 Cir., 249 F.2d 462; School Board of City of Newport News v. Atkins, 4 Cir., 246 F.2d 325; School Board of Charlottesville v. Allen, 4 Cir., 240 F.2d 59.

School Board to the extent that modification may be required to enable the Board to solve and eliminate any administrative difficulty that may arise. It may contain other provisions not inconsistent with this opinion.

The injunctive order should remain in effect until the School Board, if it elects to do so, presents and, with the approval of the District Court, adopts some other plan for the elimination of racial discrimination in the operation of the schools of Caswell County.

The District Court should retain jurisdiction of the action for further proceedings and the entry of such further orders as are not inconsistent with this opinion.

Affirmed in part; reversed in part, and remanded.