Rudolph W. ADAMS et al., Plaintiffs,

v.

SCHOOL DISTRICT NUMBER 5, ORANGEBURG COUNTY, SOUTH CAROLINA, a public body corporate, and Larry R. Wells, Chairman of the Board of Trustees of School District Number 5, Orangeburg County, Dr. Harry Atwell, R. S. Williams, Jr., Talley Smith and Edgar Culler, Members, Board of Trustees of School District Number 5, Orangeburg County, South Carolina, and H. A. Marshall, Superintendent of School District Number 5, Orangeburg County, South Carolina, Defendants.

Civ. A. No. 8301.

United States District Court
E. D. South Carolina,
Orangeburg Division.

Aug. 12, 1964.

Matthew J. Perry and Lincoln C. Jenkins, Jr., Columbia, S. C., Zack E. Townsend and Earl W. Coblyn, Orangeburg, S. C., Jack Greenberg, New York City, for plaintiffs.

Sims & Sims, James A. Moss, Jerry M. Hughes, Jr., Orangeburg, David W. Robinson, Columbia, S. C., for defendants.

SIMONS, District Judge.

This action was brought by the named Negro children residing in Orangeburg, South Carolina, and their parents on behalf of themselves and others similarly situated, as a class action under Rule 23 (a) (3) of the Fed. Rules of Civil Procedure, for a permanent injunction enjoining School District Number 5 of Orangeburg County, its Trustees and the Superintendent of said School District Number 5 from continuing the policy, practice, custom and usage of operating a compulsory biracial school system in said School District Number 5 in violation of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States.

Plaintiffs also seek an Order of this Court directing the defendants herein to integrate all school personnel and for costs.

This action was brought pursuant to the provisions of Title 28 U.S.C. § 1343 (3) and 42 U.S.C. § 1983.

In their Complaint filed March 20, 1964, the petitioners herein allege in substance that they are deprived of equal protection of the laws within the meaning of the Fourteenth Amendment in that the defendants are maintaining dual, biracial school systems with some schools being attended solely by white pupils and staffed by white teachers, principals and other professional personnel; and with the other schools being attended solely by Negro pupils and staffed by Negro principals, teachers and other professional personnel, all in violation of the principles enunciated in Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S. Ct. 686, 98 L.Ed. 873 (1954).

Plaintiffs allege that they have applied to defendants for permission to enroll the minor plaintiffs in certain schools operated by the defendants, and that, as of the date of filing their Complaint herein, no final action has been taken on the said applications. Plaintiffs admit that they have not exhausted the administrative remedies provided by the South Carolina Code of Laws, §§ 21–247, 21–247.1, 21–247.2 and 21–247.3 Code of Laws of South Carolina 1962.

The defendants in their Answer herein deny that pupil assignments are determined solely by race or color. It is alleged that, under the School Board's rules, parents of children may apply for enrollment at particular schools at any time 100 days in advance of the opening of a school term, and that the School Board does not pass on these enrollments prior to the expiration of this period. The defendants also pleaded that there were ethnic differences in educational achievement and psychometric intelligence, that would seriously impair the academic standards and educational opportunities for both white and Negro children in School District Number 5, Orangeburg County; and that it would be for the best interest of the Negro pupils, as well as the white pupils, that segregated schools be maintained.

Defendants admit in their Answer that a separation of the white and Negro races in the public schools within School District Number 5, Orangeburg County, does exist, but that it is pursuant "to voluntary custom and usage". Defendants also admit that applications from some of the minor Negro plaintiffs to enroll in certain schools for the 1964–1965 school term were received on November 4, 1963, December 2, 1963, December 9, 1963 and February 20, 1964; and they further admit that no final action has been taken on these applications. Applications from six Negro children other than plaintiffs to enroll in certain schools were also received during the period from November

694

4, 1963 to January 28, 1964, with no final action being taken.

A Pretrial Conference was held by the Court on July 14, 1964 in Columbia, S. C., with counsel for all parties present and participating. During this hearing, Motion to Intervene on behalf of Jimmy D. Rembert, et al, filed with the Court on April 23, 1964 was granted, and the Court ordered that said third parties listed in the Motion to Intervene be made parties-defendant to this action.

As a result of the Pretrial Conference, counsel for the parties agreed that no oral evidence would be offered; that the Court would consider the case on the pleadings, the plaintiffs' Interrogatories and defendants' Answers thereto, the Deposition of H. A. Marshall, Superintendent of School District No. 5, offered by the plaintiffs, and the exhibits consisting of: a) Original Petition filed by some of the plaintiffs with the Orangeburg School District in 1955 (Plaintiffs' Exhibit #1); b) Correspondence between petitioners requesting transfer and the school board subsequent to 1955 (Defendants' Exhibit #2); and c) The Appendix of appellants comprising the record on appeal to the Fourth Circuit designated as 9216, entitled "School District No. 20, Charleston, S. C., et al., appellants v. Millicent F. Brown, a minor, et al, appellees" (Defendants' Exhibit #1). Said Appendix contained the record on appeal in Brown, et al, v. School District #20, et al, 226 F.Supp. 819 (E.D.S.C.1963), affirmed 328 F.2d 618 (4th Cir. 1964) presently on Petition of Certiorari to the U. S. Supreme Court. This record contained substantial testimony indicating basic ethnic differences in educational achievement and psychometric intelligence existing between white and Negro pupils; and was strenuously objected to by plaintiffs' counsel upon the grounds that such evidence was irrelevant, immaterial and not a litigable issue in view of Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873; Brown v. School District #20, Charleston, S. C., Supra; Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.

2d 512; Watson v. City of Memphis, 373 U.S. 526, 83 S.Ct. 1314, 10 L.Ed. 529; Goss v. Board of Education of City of Knoxville, Tenn., 373 U.S. 683, 83 S.Ct. 1405, 10 L.Ed.2d 632. The Court admitted such evidence over plaintiffs' objections, so that the record in the case would be complete in the event the U. S. Supreme Court, in the case of Brown, et al, v. School District of Charleston, S. C., supra, now pending before it from this District, should modify its prior line of decisions beginning with Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 9 L.Ed. 873 (1954), by determining that the basic ethnic differences in educational achievement and psychometric intelligence between white and Negro pupils are relevant and material to the issues in this type case; and that such matters may properly be considered by school boards in the enrollment and assignment of pupils of the two races to different schools.

It was further stipulated by counsel for the parties that, as of July 14, 1964, there were no changes in the parties-plaintiffs or parties-defendants to this action; and that the minor plaintiffs and the other six Negro applicants still desired to transfer to the white schools in District No. 5, in accordance with their prior applications. Also at the Pretrial Conference, the Court denied plaintiffs' Motion to Strike Paragraph 11 of defendants' Answer as redundant, immaterial and impertinent.

At the end of the Pretrial Conference, it was stipulated by counsel for all parties that the record was complete, and that the only matter left undecided by the Court was plaintiffs' Motion for a Summary Judgment. The Court, on July 16, 1964, issued its Pretrial Order embodying all matters passed upon, stipulations entered into, and agreements made by the parties.

The record in this case conclusively shows that the defendants are continuing to maintain and operate dual, biracial schools; and that they have constantly failed or refused to take any appreciable steps to comply with the U. S. Supreme

Court's desegregation decisions, beginning with Brown v. Board of Education, Supra, which said decisions have been fully and consistently subscribed to and implemented by numerous decisions of the Court of Appeals for the Fourth Circuit and the District Courts of this State.

The defendants herein rely heavily on the ethnic differences in educational achievement and psychometric intelligence that exist between the white and Negro pupils in the Orangeburg community, (Defendants' Exhibit #1), to support their position for maintaining separate schools in the interest of the children of both races. It was stipulated by Counsel during the Pretrial Conference held on July 14, 1964, that testimony of the basic differences between white and Negro children in the Charleston, S. C. area introduced in the record in the case of Brown v. School District No. 20, Charleston, S. C., supra, was adequate to cover the issues raised in Paragraph 11 of defendant's Answer and in the Intervenors' Answer in the instant case, as to the basic differences between white and Negro children in the Orangeburg area.[1]

█ Although this Court is impressed by the evidence of basic differences which appear to exist between the children of the two races, as presented by the defendants and intervenors herein, it is bound under the doctrine of *stare decisis* from considering such evidence in connection with this case, unless the Supreme Court should modify its prior desegregation decisions, Supra. As was stated by Judge Martin in Brown v. School District No. 20, Charleston, S. C.:

> "In Brown v. Board of Education, 347 U.S. 483, 495, 74 S.Ct. 686, 692, 98 L.Ed. 873, the United States Supreme Court held:
>
> > "'We conclude that in the field of public education the doctrine of "separate but equal" has no place. Separate educational facilities are inherently unequal. Therefore, we hold that the plaintiffs and

others similarly situated for whom the actions have been brought are, by reason of the segregation complained of, deprived of the equal protection of the laws guaranteed by the Fourteenth Amendment.'

"The position taken by the defendants and the intervenors in effect, asks this Court (a U. S. District Court) to overrule the United States Supreme Court, the Fourth Circuit Court of Appeals and all the numerous decisions by those courts, reiterating, expanding and amplifying the holdings of the United States Supreme Court in Brown v. Board of Education (supra). Under the doctrine of *stare decisis* this Court has no such authority." supra, 226 F. Supp. pp. 825, 826.

The Opinion in this case was affirmed by the Court of Appeals of the Fourth Circuit, 328 F.2d 618.

## FINDINGS OF FACT

1) Orangeburg School District No. 5 is completely segregated; seven schools are designated for the attendance of white children, and seven schools are designated for the attendance of Negro children. No Negro child has ever been assigned to a white school, and no white child has ever been assigned to a Negro school.

2) There are no formal pre-registration procedures for beginning students in the Orangeburg schools. White students register for the white schools, and Negro students register for the Negro schools.

3) White children move from elementary schools to white junior high and high schools, and Negro children move from Negro elementary schools to Negro junior high and high schools.

4) Applications from several of the Negro minor plaintiffs and others of their class have been timely made to transfer to previously all-white schools.

5) No final action has been taken by the School Board on the transfer applications.

1. See Pretrial Order dated July 16, 1964.

6) The plaintiffs have not exhausted their administrative remedies contained in § 21–247 et seq., Code of Laws for S.C. 1962.

7) The plaintiffs would have been denied their requests to transfer, had they exhausted all administrative remedies.

8) The authorities of School District No. 5 have apparently made no effort to comply with the Supreme Court's rulings in the Brown decisions and subsequent decisions of the Courts. Neither have they proposed any plan to implement these desegregation decisions, and have indicated through counsel that they have no present intentions to do so. Thus, this Court is without any choice but to follow the decisions of the U. S. Supreme Court and the Court of Appeals of the Fourth Circuit, supra and infra.

■ In applying the undisputed facts in this case to the controlling principles of law as so overwhelmingly enunciated by the Appellate Courts, this Court must conclude that the defendants herein, their agents, servants and employees are acting in a manner so as to deprive the plaintiffs and others of their class of their constitutional rights, under the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States, and must, therefore, find as a matter of law that the plaintiffs herein are entitled to a Summary Judgment.

In Brown v. Board of Education of Topeka, Supra, the Supreme Court of the United States stated:

"We conclude that in the field of public education the doctrine of 'separate but equal' has no place. Separate educational facilities are inherently unequal. Therefore, we hold that the plaintiffs and others similarly situated for whom the actions have been brought are, by reason of the segregation complained of, deprived of the equal protection of the laws guaranteed by the Fourteenth Amendment."

The Supreme Court, in Brown v. Board of Education of Topeka, 349 U.S. 294 at page 300, 75 S.Ct. 753, at page 756, 99 L.Ed. 1083, further stated:

"At stake is the personal interest of the plaintiffs in admission to public schools as soon as practicable on a nondiscriminatory basis. To effectuate this interest may call for elimination of a variety of obstacles in making the transition to school systems operated in accordance with the constitutional principles set forth in our May 17, 1954, decision. Courts of equity may properly take into account the public interest in the elimination of such obstacles in a systematic and effective manner. But it should go without saying that the vitality of these constitutional principles cannot be allowed to yield simply because of disagreement with them.

"While giving weight to these public and private considerations, *the courts will require that the defendants make a prompt and reasonable start toward full compliance with our May 17, 1954, ruling.* \* \* \*" (Emphasis added).

In conclusion, at page 301, 75 S.Ct. at page 757, the Court stated:

"\* \* \* [T]he cases are remanded to the District Courts to take such procedures and enter such orders and decrees consistent with this opinion as are necessary and proper to *admit to public schools on a racially non-discriminatory basis with all deliberate speed the parties to these cases.*" (Emphasis added).

The Supreme Court further declared, in Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958):

"State authorities were thus duty bound to devote every effort toward initiating desegregation and bringing about the elimination of racial discrimination in the public school system".

These mandates from the Supreme Court of the United States have been religiously and faithfully followed by the Court of Appeals of the Fourth Circuit

in all of its decisions, so that today this Court has no alternative but to follow along the pathway that has been so clearly and unmistakably delineated in these decisions.

■■ As stated by Chief Judge Sobeloff in Buckner v. County School Board of Greene County, Virginia, 4 Cir., 332 F.2d 452 (decided May 25, 1964):

"It is too late in the day for this school board to say that merely by the admission of a few plaintiffs, without taking any further action, it is satisfying the Supreme Court's mandate for 'good faith compliance at the earliest practicable date.'

"The right of the plaintiffs to obtain injunctive relief for the class they represent as well as individual relief for themselves is clear beyond doubt. School Board of the City of Charlottesville, Virginia v. Allen (County School Bd. of Arlington County v. Thompson), 240 F.2d 59 (4th Cir. 1956), upheld the plaintiffs' right 'to obtain a general injunction against the school officials prohibiting racial discrimination in the administration of the schools * * *.' Green v. School Board of City of Roanoke, Virginia, 304 F.2d 118, 123 (4th Cir. 1962). And these cases blazed no new trail. Injunctions were similarly ordered in Frasier v. Board of Trustees of University of North Carolina, 134 F.Supp. 589, 593 (M.D.N.C.1955) (three-judge court), aff'd per curiam, 350 U.S. 979, 76 S.Ct. 467, 100 L.Ed. 848 (1956), against discriminatory administration of the University of North Carolina."

The Court, at page 455, further stated:

"When Judge Martin enjoined the Charleston, South Carolina, School Board from continuing its policy of racial segregation and ordered them to admit all applicants to the schools of their choice until the Board had submitted to the court and gained approval of a plan of desegregation, we upheld the court's action as appropriate. Brown v. School District No. 20, Charleston, South Carolina, 328 F.2d 618 (4th Cir. 1964)."

In Green v. School Board of City of Roanoke, Virginia, supra, the Court repeated that:

"'[T]he individual (Negro) appellants are entitled to relief, and also they have the right to an injunction on behalf of the others similarly situated.' (304 F.2d at 124). The same principle was enunciated and injunctions were ordered in Jeffers v. Whitley, 309 F.2d 621 (4th Cir. 1962)."

In Wheeler v. Durham City Board of Education, 309 F.2d 630, (4th Cir. 1962), the Court said:

"[T]hese plaintiffs are entitled to an order for their admission for the 1962–63 school year to the schools for which they have applied, to a declaratory judgment that the defendants are administering the North Carolina Pupil Enrollment Act in an unconstitutional manner, and to an injunction against the continuance of the board's discriminatory practices. The injunction shall control all future assignment of pupils to schools unless and until the defendants submit to the District Court a suitable plan for ending the existing discrimination. 'Any such plan, before being approved by the District Court, should provide for immediate steps looking to the termination of the discriminatory practices "with all deliberate speed" in accordance with a specified time table.' [Green v. School Board of City of Roanoke, 304 F.2d 118 (4th Cir. 1962)]" (309 F.2d at 633).

In Bradley v. School Board of the City of Richmond, Virginia, 317 F.2d 429, (4th Cir. 1963), the Court again reiterated:

"[N]ot only are the individual infant plaintiffs entitled to relief which has been ordered but the plaintiffs are entitled, on behalf of others of the class they represent and who are

similarly situated, to an injunction against the continuation of the discriminatory system and practices which have been found to exist."

The Fourth Circuit, in Jeffers v. Whitley, 309 F.2d 621 at page 629 (1962), stated that the plaintiffs were:

"[E]ntitled to an order enjoining the School Board from refusing admission to any school of any pupil because of the pupil's race. So long as the School Board follows its practice of racial assignments, the injunctive order should require that it freely and readily grant all requests for transfer or initial assignment to a school attended solely or largely by pupils of the other race."

Other recent cases of the Fourth Circuit dealing with the general principles herein involved and which are binding on this Court are as follows: Bell v. School Board of Powerton Co., Va., 321 F.2d 494; Brunson v. Board of Trustees, School Dist. #1, 4 Cir., 311 F.2d 107; Hill v. School Board of City of Norfolk, Va., 4 Cir., 282 F.2d 473; Farley v. Turner, 281 F.2d 131; Jones v. School Board of City of Alexandria, Va., 4 Cir., 278 F.2d 72; School Board of Warren Co. v. Kilby, 4 Cir., 259 F.2d 497; School Board of City of Norfolk v. Beckett, 4 Cir., 260 F.2d 18.

## ORDER

1) It is ordered that the defendants herein, their agents, servants and employees, admit and enroll as students, the minor plaintiffs herein and the other six Negro children who have heretofore made timely applications for transfers, at the white schools to which they would be entitled as a white child living in the same school zone, for the school term beginning September 1964, subject to the same terms and conditions as other students enrolled in said schools; provided, however, that such Negro children present themselves at said schools for registration at the beginning of the new school term in September 1964.

2) It is further ordered that the defendants, their agents, servants and employees are hereby restrained and enjoined from refusing admission to the plaintiffs herein, and the other eligible Negro applicants for transfer on the basis of race, color or creed.

3) It is further ordered that because of the short period of time before the beginning of the 1964–1965 school year; the uncertainty of the number of applicants that may desire transfer to a different school than the one in which they are presently enrolled; the uncertainty of the number of first grade students who may desire to enroll in a school other than the one in which they would have been enrolled prior to this Order; the administrative difficulties that would necessarily flow from such uncertainties, this Court, in the exercise of the discretion vested in it, holds that it would be impractical to require the Board to admit others, similarly situated to the plaintiffs herein, other than the six Negro applicants who have heretofore made timely applications for transfers, to schools other than those they are presently enrolled in or other than those that they would be initially enrolled in, under the dual system now in existence for the 1964–1965 school year.

4) It is further ordered that, beginning with the school year 1965–1966, the defendants and their agents, servants and employees are restrained and enjoined from refusing admission, assignment or transfer of any other Negro child entitled to attend the schools under their supervision, management or control on the basis of race, color or creed.

5) It is further ordered that beginning with the school year 1965–1966 the defendants and their agents, servants and employees are hereby restrained and enjoined from:

(a) Failing or refusing to freely and readily grant requests by parents or guardians for the transfer or initial assignment of pupils to a school attended solely or largely by pupils of another race, color or creed from that of the applicant's race, color or creed.

(b) Conditioning the grant of requests for transfers or initial assignments pursuant to 5(a) above upon the applicant's submission to any futile, burdensome or discriminatory administrative procedures which are not uniformly applied in assigning all pupils.

6) It is further ordered that the defendants, their agents, servants and employees shall as hereinafter provided give notice to the parents or guardians of all pupils presently attending schools in Orangeburg County School District No. 5, as well as those who shall hereafter enroll in the said school system, of the right of all pupils or parents or guardians to freely choose to attend a racially non-segregated school.

7) It is further ordered that the following procedures with respect to initial assignment, enrollment and transfer of pupils in Orangeburg County School District No. 5 are hereby approved by this Court as a reasonable and legal plan to enable the Board to adequately plan and make realistic arrangements for the school year beginning September 1965.

a) The assignment of pupils seeking enrollment in the system in an elementary school for the first time, or in a junior or senior high school for the first time shall be made upon considerations of the following criteria and without regard to race, color or creed:

1) The preference indicated by the pupil's application.

2) Whether the educational program of the pupil can be met by the school to which assignment is sought.

3) The capacity of the school to which assignment is sought.

4) The availability of space in schools other than the school from which and to which entry is sought.

5) The distance the pupil lives from such school.

b) Pupils shall be assigned to the schools which they attended the preceding year, except those eligible for promotion to a different school. Notwithstanding, however, and as a matter of absolute right, application may be made by the parent or legal guardian of such pupils for placement in another school specified in the application therefor, in which case the reason for the requested transfer must be stated. Such application shall be considered under the direction of the Board, and acted upon in the light of criteria set forth in items 1, 2, 3, 4 and 5 of paragraph "a" hereinabove without regard to race, color or creed, within fifteen (15) days from its receipt.

c) For the school year beginning in September 1965 applications for transfers must be made on forms to be provided and received by the Superintendent of the City Schools of Orangeburg School District No. 5 on or before June 1, 1965. Application forms shall be available in the Office of the Superintendent of the City Schools of Orangeburg, School District No. 5 May 1, 1965 through June 1, 1965, and may be obtained upon request of any applicant at said Superintendent's Office. Only official forms shall be used, and they shall be delivered only to pupils, parents, legal guardians or persons in *loco parentis* to applicant.

d) Application forms to be used on behalf of pupils establishing residence in the School District after June 1, 1965 shall be available in said Superintendent's Office, and should be filed with said Superintendent on behalf of such pupils as soon as practicable. All applications shall be considered and acted upon within fifteen (15) days.

8) It is further ordered that a copy of paragraphs 6 and 7 of this Order be conspicuously published in The Times Democrat printed in Orangeburg County once a week for two successive weeks immediately prior to May 1, 1965, and each year thereafter as required under this Order.

9) It is further ordered that the provisions of paragraphs 6, 7 and 8 above are to remain in effect in the future until they are modified by further Order of this Court; or until the defendant school authorities present to this Court and obtain its approval of some other plan for the

elimination of racial discrimination in the operation of the public schools in District No. 5.

10) It is further ordered that any party to this action may apply to this Court for any modification of this Order which may appear reasonable in meeting administrative obstacles, or in carrying out the intent and purpose of the Order.

11) It is further ordered that this Court retain jurisdiction of this cause for such further proceedings, and entry of such further orders as are necessary and proper, including the questions of teacher qualifications and assignments, as well as attorneys' fees requested by plaintiffs.

12) In the event some of the named defendants are no longer serving in the capacity of officers of Orangeburg School District No. 5,

It is ordered that their successors in office, not originally named as defendants in this action, are substituted as defendants herein for their predecessors in public office. Counsel for the defendants are directed to make known to the United States Marshal the names of such new school officials of the Orangeburg County School District No. 5, in order that a copy of this Order may be served upon each, personally, by the Marshal.