Bobby BRUNSON, Elizabeth Brunson and Ellis Brunson, by McQueen Brunson, their father and next friend, et al., Plaintiffs,

v.

BOARD OF TRUSTEES OF SCHOOL DISTRICT NO. 1 OF CLARENDON COUNTY, SOUTH CAROLINA; L. B. McCord, County Superintendent of Education; C. E. Buttes, District Superintendent of Education; J. W. Sconyers, Chairman, Board of Trustees; C. N. Plowden, W. A. Brunson, Henry Everett, and L. Richardson, Members of the Board of Trustees, Defendants.

Civ. A. No. 7210.

United States District Court
E. D. South Carolina,
Charleston Division.

Aug. 19, 1965.

Matthew J. Perry, Lincoln C. Jenkins, Jr., Columbia, S. C., Jack Greenberg, James M. Nabrit, III, Michael Meltsner, New York City, for plaintiffs.

J. O. Rogers, Jr., Manning, S. C., D. W. Robinson, Columbia, S. C., for defendants.

SIMONS, District Judge.

This action was brought by the named Negro children residing within School District No. 1, Clarendon County, South Carolina, and their parents on behalf of themselves and others similarly situated, as a class action under Rule 23[a] [3] of the Federal Rules of Civil Procedure,[1] for a permanent injunction enjoining School District No. 1, Clarendon County, its Trustees, the County Superintendent of Education, and the Superintendent of said School District No. 1, from continuing the policy, practice, custom and usage of operating a compulsory biracial school system in said School District No. 1, in violation of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States; or in the alternative to

---

1. Right of multiple plaintiffs to join in the action under Rule 23[a] [3] was upheld by Fourth Circuit Court of Appeals December 1962. See 311 F.2d 107, cert. den. 373 U.S. 933, 83 S.Ct. 1538, 10 L.Ed. 2d 690 [1963].

require defendants to present a complete plan for the reorganization of the said school system to eliminate any and all discriminations in the operation of the school system based solely upon race and color.

Jurisdiction of the court is invoked pursuant to Title 28 U.S.C. § 1343[3] and Title 42 U.S.C. § 1983.

In their complaint filed April 13, 1960, plaintiffs allege that defendants, acting under color of the laws of South Carolina, are maintaining a biracial school system in School District No. 1, Clarendon County, consisting of one system of elementary and high schools attended solely by white pupils and staffed by white teachers and principals, and another system of elementary and high schools attended solely by Negro pupils and staffed by Negro teachers and principals, in violation of the Fourteenth Amendment to the Constitution, as enunciated by the United States Supreme Court in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 [1954].

Plaintiffs also allege that they have heretofore made written applications to enroll in schools operated by defendants for white children only; and that, as of the date of filing their complaint, no final action had been taken on the said applications. They further allege that defendants have consistently ignored the order of the United States District Court for the Eastern District of South Carolina, dated July 15, 1955, providing that officials of School District No. 1 operate the Clarendon County school system on a nondiscriminatory basis in accordance with the principles announced in Brown v. Board of Education, supra,[2] that efforts have been made by plaintiffs, through counsel, to have defendants comply with this court order to no avail.

Plaintiffs admit that they have not exhausted all administrative remedies provided by the South Carolina Code of Laws 1962, § 21–247 et seq.

In their answer defendants admit that in School District No. 1, Clarendon County, separate elementary and high schools exist for white and Negro students residing within the district. They assert that such a system is maintained in accordance with the wishes and desires of the great majority of parents of both races living within the District; and that the present system places each child in the school to which he is best suited for educational potential, and accords to each his Constitutional right of equal protection.

The answer further alleges that none of the plaintiffs has ever made timely applications for transfers to white schools; that the administrative procedures established by statute law of the State relating to requests by parents for transfers of children from one school to another have been fully implemented by defendants; and that such remedies are adequate to provide any relief to which plaintiffs may be entitled.

A pretrial conference was held by the court May 20, 1965, prior to trial of this case, with counsel for all parties present and participating. It was determined during the conference that, of the 42 plaintiffs named in the complaint, only nine will remain of school age for the term commencing September 1965; and that all nine of these pupils still desire to be transferred from the all-Negro schools they have been attending to previously all-white schools. These nine plaintiffs are: 1] Charles Hilton, 2] Ritta McDonald, 3] Mary Oliver, 4] Henry Jeff Ragin, 5] Lucretia Ragin, 6] Willie Jerome Ragin, 7] Rochelle Stukes, 8] Marcian Stukes, and 9] Idella Tindal. It was also agreed by the parties that Mr. J. W. Sconyers is now Chairman of District I Board of Trustees; that Mr. W. C. Sprott is no longer a Board member; and that Mr. Henry Everett is now a Board member, having replaced Mr. A.

2. This decree was issued by three-judge court in case of Briggs v. Elliott, D.C., 132 F.Supp. 776 [1955]. Some adult plaintiffs in instant case were plaintiffs in original Briggs case filed 1950 which was one of the four cases decided by the Supreme Court in its 1954 and 1955 opinions.

B. Edwards, deceased. These personnel changes have been included and set forth in the title and caption of the case.

## FINDINGS OF FACT

The record in this case conclusively shows: [1] That defendants have heretofore maintained and are at the present time continuing to maintain, a compulsory biracial school system, whereby white students initially register for and thereafter attend all-white schools, and Negro students initially register for and thereafter attend Negro schools.

Defendants maintain four elementary schools and two high schools. Three elementary schools and one high school are attended solely by Negro pupils and staffed by Negro personnel. One elementary school and one high school are attended solely by white pupils and staffed by white personnel.

Approximately 2200 Negro pupils attend the elementary schools, and 600 Negro pupils attend the Negro high school. Approximately 180 white students attend the white elementary school and 150 attend the white high school. There are no junior high schools operated in District No. 1.

Pupils graduating from all-white elementary schools are assigned to the white high school; Negro pupils graduating from the Negro elementary schools are assigned to the Negro high school. No Negro child has ever been assigned to a white school, and no white child has ever been assigned to a Negro school.

A pre-school registration for beginning students is held in May of each year, with notices being sent by each elementary school principal to parents having children of beginning school age. Notices of pre-school registration in white schools are only sent to white parents, and notices of pre-school registration for colored schools are only sent to Negro parents.

Applications have heretofore been made by some named plaintiffs, including all of the nine plaintiffs still of school age, to transfer from all-Negro schools to the previously all-white schools. No final action has ever been taken on any of these applications.

The plaintiffs have not exhausted their administrative remedies provided for in §§ 21–247 et seq., 1962 South Carolina Code of Laws. Plaintiffs would have been denied their requests to transfer, had they proceeded to exhaust all such administrative remedies.

The defendants have made no substantial effort to comply with the Supreme Court's rulings in the Brown decisions and subsequent decisions of the Courts. Neither have they proposed any plan to implement these desegregation decisions, and have indicated through counsel that they have no present intentions to do so. Thus, this court is without any choice but to follow the many decisions of the U. S. Supreme Court and the Court of Appeals of the Fourth Circuit, all of which have set the guidelines which bind this court.

In applying the established facts in this case to the controlling principles of law as so overwhelmingly enunciated by the Appellate Courts, this Court must conclude that the defendants herein, their agents, servants and employees are acting in a manner so as to deprive the plaintiffs and others of their class of their constitutional rights, under the due process and equal protection clauses of the Fourteenth Amendment to the Constitution of the United States.

Defendants are operating the schools in District No. 1 in a discriminatory manner based exclusively upon the race of the students attending the elementary and high schools. This is precisely the practice condemned in the field of public education by the United States Supreme Court in Brown v. Board of Education, supra. In the Brown case, the Court stated 347 U.S. at page 495, 74 S.Ct. at page 692:

"We conclude that in the field of public education the doctrine of 'separate but equal' has no place. Separate educational facilities are inherently unequal. Therefore, we hold

that the plaintiffs and others similarly situated for whom the actions have been brought are, by reason of the segregation complained of, deprived of the equal protection of the laws guaranteed by the Fourteenth Amendment."

Defendants contend that the maintenance of segregated public schools is in the best interest of pupils of both races, and accords each child his constitutional rights of equal protection of the laws. However, the United States Supreme Court in Brown v. Board of Education, supra, has clearly and unmistakenly declared that in the field of public education discrimination against an individual based upon race is injurious to the aggrieved person and denies him certain fundamental constitutional rights.

The Supreme Court further stated in the second Brown decision, Brown v. Board of Education, 349 U.S. 294 at page 300, 75 S.Ct. 753 at page 756, 99 L.Ed. 1083 [1955]:

"At stake is the personal interest of the plaintiffs in admission to public schools as soon as practicable on a nondiscriminatory basis. To effectuate this interest may call for elimination of a variety of obstacles in making the transition to school systems operated in accordance with the constitutional principles set forth in our May 17, 1954, decision. Courts of equity may properly take into account the public interest in the elimination of such obstacles in a systematic and effective manner. But it should go without saying that the vitality of these constitutional principles cannot be allowed to yield simply because of disagreement with them.

"While giving weight to these public and private considerations, *the courts will require that the defendants make a prompt and reasonable start toward full compliance with our May 17, 1954, ruling. * * *"* [Emphasis added].

In conclusion, at page 301, 75 S.Ct. at page 757, the Court stated:

" * * * [T]he cases are remanded to the District Courts to take such procedures and enter such orders and decrees consistent with this opinion as are necessary and proper to *admit to public schools on a racially nondiscriminatory basis with all deliberate speed the parties to these cases.*" [Emphasis added].

These constitutional principles enunciated by the Supreme Court have been consistently followed by the Court of Appeals for the Fourth Circuit, other appellate courts, and in all other decisions by the Federal District Courts for the Eastern and Western Districts of South Carolina, involving rights of Negro children to attend previously all-white public schools.[3]

In Jeffers v. Whitley, 309 F.2d 621 [1962], the Fourth Circuit in discussing the impact of the decisions of the United States Supreme Court said at pages 627 and 629:

"Though a voluntary separation of the races in schools is uncondemned by any provision of the Constitution, its legality is dependent upon the volition of each of the pupils. If a reasonable attempt to exercise a pupil's individual volition is thwarted by official coercion or compulsion, the organization of the schools, to that extent, comes into plain conflict with the constitutional requirement. A voluntary system is no longer voluntary when it becomes compulsive.

"This is not to say that when a pupil is assigned to a school in accordance

3. Brown, et al., v. School District No. 20, Charleston, S. C., D.C., 226 F.Supp. 819 [1963], aff. 328 F.2d 618 [1964], cert. den. Allen v. Brown, 379 U.S. 825, 85 S.Ct. 52, 13 L.Ed.2d 35 [1964]; Stanley et al., v. Darlington County School District, filed July 11, 1964 [E.D.S.C.]; Adams, et al., v. School District No. 5, Orangeburg County, S. C., D.C., 232 F. Supp. 692 [1964]; Randall, et al., v. Sumter School District No. 2, 241 F.Supp. 787 [1965]; Whittenberg v. School District of Greenville County, filed April 27, 1964 [W.D.S.C.].

with his wish, he must be transferred immediately if his wishes change in the middle of a school year. It does not mean that alternatives may not be limited if one school is overcrowded while others are not, or that special public transportation must be provided to accommodate every pupil's wish. It does mean that if a voluntary system is to justify its name, it must, at reasonable intervals, offer to the pupils reasonable alternatives, so that, generally, those, who wish to do so, may attend a school with members of the other race. * * *

"On behalf of others, similarly situated, the appellants are not entitled to an order requiring the School Board to effect a general intermixture of the races in the schools. They are entitled to an order enjoining the School Board from refusing admission to any school of any pupil because of the pupil's race. So long as the School Board follows its practice of racial assignments, the injunctive order should require that it freely and readily grant all requests for transfer or initial assignment to a school attended solely or largely by pupils of the other race. The order should prohibit the School Board's conditioning its grant of any such requested transfer upon the applicant's submission to futile, burdensome or discriminatory administrative procedures."

■ Plaintiffs have admitted that they have not exhausted the administrative remedies provided under South Carolina Code of Laws, § 21–247 et seq. However, where such remedies are not part of a voluntary system permitting interracial transfers, but rather operate as a burden to an individual seeking constitutional rights, they need not be exhausted before courts can be looked to for relief. Jeffers v. Whitley, supra, 309 F.2d at page 628.

Also, in the recent case McNesse v. Board of Education, 373 U.S. 668, 83 S. Ct. 1433, 10 L.Ed.2d 622 [1963], the Supreme Court declared that questions of constitutional rights of Negro pupils to attend integrated public schools involve no underlying issue of state law, and may be brought before federal courts without their having exhausted state administrative remedies.

ORDER

■ [1] It is ordered that the defendants herein, their agents, servants and employees, admit and enroll as students the nine minor plaintiffs named herein, who are still of school age and who have heretofore made application for transfer, at the white elementary or high school to which they would be entitled as a white child living in said district for the school term beginning September, 1965 and as long thereafter as the said Negro children desire to continue to attend the white schools, subject to the same terms and conditions as other students enrolled in said schools; provided, however, that such Negro children present themselves at said schools for registration at the beginning of the new school term in September, 1965.

■ It is further ordered that the defendants, their agents, servants and employees be, and they are hereby, restrained and enjoined from refusing admission to the nine named plaintiffs herein who are still of school age to the previously all-white schools on the basis of race, color or creed.

■ It is further ordered that, because of the short period of time before the beginning of the 1965–66 school year, the uncertainty of the number of applicants that may desire to transfer to a different school than the one in which they are presently enrolled, the uncertainty of the number of first grade students who may desire to enroll in a school other than the one in which they would have been enrolled prior to this Order, the administrative difficulties that would necessarily flow from such uncertainties, this court, in the exercise of the discretion vested in it holds that it would be impractical to require the defendants to admit others, similarly situated to the

nine plaintiffs hereinabove named, to schools other than those in which they are presently enrolled, or other than those in which they would be initially enrolled, under the dual system now in existence for the 1965–66 school year.

■ It is further ordered that, beginning with the school year 1966–67, the defendants and their agents, servants and employees are restrained and enjoined from refusing admission, assignment or transfer of any other Negro child entitled to attend the schools under their supervision, management, or control, on the basis of race, color or creed.

■ It is further ordered that beginning with the school year 1966–67 the defendants and their agents, servants and employees are hereby restrained and enjoined from:

[a] Failing or refusing to freely and readily grant requests by parents or guardians for the transfer or initial assignment of pupils to a school attended solely or largely by pupils of another race, color or creed from that of the applicant's race, color or creed.

[b] Conditioning the grant of requests for transfers or initial assignments pursuant to 5[a] above upon the applicant's submission to any futile, burdensome or discriminatory administrative procedures which are not uniformly applied in assigning all pupils.

■ It is further ordered that the defendants, their agents, servants and employees shall as hereinafter provided give notice to the parents or guardians of all pupils presently attending schools in Clarendon County School District No. 1, as well as those who shall hereafter enroll in the said school system, of the right of all pupils or parents or guardians to freely choose to attend a racially nonsegregated school.

■ It is further ordered that the following procedures with respect to initial assignment, enrollment and transfer of pupils in Clarendon County School District No. 1 are hereby approved by this court as a reasonable and legal plan to enable the Board to adequately plan and make realistic arrangements for the school year beginning September 1966.

[A] The assignment of pupils seeking enrollment in the system in an elementary school or high school for the first time shall be made upon considerations of the following criteria and without regard to race, color or creed:

■ The preference indicated by the pupil's application.

■ Whether the educational program of the pupil can be met by the school to which assignment is sought.

■ The capacity of the school to which assignment is sought.

■ The availability of space in schools other than the school from which and to which entry is sought.

■ The distance the pupil lives from such school.

[B] Pupils shall be assigned to the schools which they attended the preceding year, except those eligible for promotion to a different school. Notwithstanding, however, and as a matter of absolute right, application may be made by the parent or legal guardian of such pupils for placement in another school specified in the application therefor, in which case the reason for the requested transfer must be stated. Such applications shall be considered under the direction of the Board, and acted upon in the light of criteria set forth in items 1, 2, 3, 4 and 5 of paragraph "A" herein above without regard to race, color or creed, within fifteen [15] days from its receipt.

[C] For the school year beginning in September 1966 applications for transfers must be made on forms to be provided and received by the Superintendent of Clarendon County School District No. 1 on or before June 1, 1966. Application forms shall be available in the Office of the Superintendent

of Clarendon County School District No. 1 from May 1, 1966 through June 1, 1966, and may be obtained upon request of any applicant at said Superintendent's Office. Only official forms shall be used, and they shall be delivered only to pupils, parents, legal guardians or persons in *loco parentis* to applicant.

[D] Application forms to be used on behalf of pupils establishing residence in the School District after June 1, 1966 shall be available in said Superintendent's Office, and should be filed with said Superintendent on behalf of such pupils as soon as practicable. All applications shall be considered and acted upon within fifteen [15] days.

It is further ordered that a copy of paragraphs 6 and 7 of this Order be conspicuously published in "The Manning Times" printed in Manning, Clarendon County, once a week for two successive weeks immediately prior to May 1, 1966, and each year thereafter as required under this Order.

It is further ordered that the provisions of paragraphs 6, 7 and 8 above are to remain in effect in the future until they are modified by further order of this court; or until the defendant school authorities present to this court and obtain its approval of some other plan for the elimination of racial discrimination in the operation of the public schools in District No. 1.

It is further ordered that any party to this action may apply to this court for any modification of this Order which may appear reasonable in meeting administrative obstacles, or in carrying out the intent and purpose of the Order.

It is further ordered that this court retain jurisdiction of this cause for such further proceedings, and entry of such further orders as are necessary and proper.

In the event some of the named defendants are no longer serving in the capacity of officers of Clarendon County School District No. 1, it is

Ordered that their successors in office, not originally named as defendants in this action, are substituted as defendants herein for their predecessors in public office. Counsel for the defendants are directed to make known to the United States Marshal for the Eastern District of South Carolina the names of such new school officials of the Clarendon County School District No. 1, in order that a copy of this Order may be served upon each personally by the Marshal.